641 A.2d 321

**COMMONWEALTH of Pennsylvania**

v.

**Tyrone WALLACE, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 19, 1994.

Filed May 5, 1994.

520

Wayne Sachs, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before WIEAND, OLSZEWSKI and HOFFMAN, JJ.

WIEAND, Judge.

Tyrone Wallace was tried by jury and was found guilty of two counts of aggravated assault and single counts of burglary and possession of an instrument of crime. Post-trial and supplemental post-trial motions were denied, and Wallace was sentenced to serve an aggregate term of imprisonment for not less than eleven (11) years nor more than thirty-two (32) years, to be followed consecutively by a five (5) year period of probation. A direct appeal was taken to the Superior Court, but this was subsequently dismissed for failure to file an appellate brief. Wallace then filed a petition under the Post Conviction Relief Act, and, pursuant thereto, was granted the right to file a direct appeal nunc pro tunc. In his nunc pro tunc appeal, Wallace, who represents that he is legally deaf, argues that the trial court erred by failing to appoint a sign language interpreter under 42 Pa.C.S. § 8701(b). He contends also that his trial counsel was ineffective for failing to request the appointment of an interpreter. His post-verdict counsel was also ineffective, he argues, for failing to raise and preserve this issue for appellate review.

The factual scenario underlying appellant's convictions was briefly summarized in the opinion of the trial court as follows:

[O]n the evening of July 12, 1988, at about 7:30 P.M., Jose Diaz and his live-in girlfriend Carmen Delgado were in the dining room of their home—he on the telephone, she seated nearby—when defendant kicked in the front storm door. Distracted by the noise, Mr. Diaz faced the intruder. The defendant was four feet away when he opened fire [with a handgun]; the victims took cover behind the refrigerator. Ms. Delgado's daughter was outside the home on a neighbor's stoop when she saw the defendant kick in the storm

door and enter the house. She ran to the house, coming face to face with the defendant as he left the house and got into a car. Mr. Diaz and Ms. Delgado testified that as soon as defendant entered, they recognized him as being the same person they had jousted with a half-hour before when they found him urinating in their back yard. All three of the above named identified defendant as the intruder. The defense was one of alibi.

On appeal, appellant contends that, because he is deaf, the trial court was required under 42 Pa.C.S. § 8701(b) to appoint an interpreter to assist him in understanding the proceedings. He argues that the trial court's failure to appoint an interpreter resulted in the denial of his constitutional rights to due process and to confront his accusers. According to appellant, he is totally deaf in one ear, has limited hearing in his other ear and can read lips only when the pace of the conversation is slow. At his trial, he argues, the pace of conversation was increased so that he could not follow what was being said without the aid of a sign language interpreter. The Commonwealth maintains that, because appellant admits to having some hearing and being able to read lips, he does not meet the requirements for appointment of an interpreter under 42 Pa.C.S. § 8701. The Commonwealth argues further that appellant never made a request for an interpreter during his trial and did not otherwise attempt to apprise the trial court that he was having difficulty understanding the proceedings. Finally, the Commonwealth contends, the record discloses that appellant was able to communicate with counsel and the court during trial. Therefore, the Commonwealth argues, the trial court did not abuse its discretion by failing sua sponte to appoint an interpreter to assist appellant at trial.

The provisions of 42 Pa.C.S. § 8701, in pertinent part, are as follows:

§ 8701.  **Interpreters for the deaf**

. . . .

(b) **Criminal proceedings.**—In any criminal proceeding in which a defendant is deaf the court shall appoint an

interpreter to assist the defendant throughout the proceeding.

. . . .

(d) **Definitions.**—As used in this section the following words shall have the meanings given to them in this subsection:

"**Deaf.**" Persons who are deaf or whose hearing is so impaired that they are unable to understand or communicate the spoken English language.

"**Interpreter.**" A person qualified and trained to translate for or communicate with deaf persons. Any person certified by the National or Local Registry of Interpreters for the Deaf or similar registry shall be considered qualified for the purposes of this section.

42 Pa.C.S. § 8701(b) and (d).

Webster's Third New International Dictionary (1965) defines "deaf" as "lacking or deprived of the sense of hearing either wholly or in part: unable to perceive sounds: having a sense of hearing that is inadequate for the purposes of daily living." *Id.* at 580. Similarly, Black's Law Dictionary (5th ed. 1979) defines a "deaf person" as "[a]ny person whose hearing is so seriously impaired as to prohibit the person from understanding oral communications when spoken in a normal conversational tone." *Id.* at 359. Therefore, we reject the Commonwealth's initial suggestion that a person who has a limited ability to hear, or who has some ability to read lips, is automatically excluded from the purview of section 8701. The basic inquiry must focus upon whether a defendant with a hearing impairment requires an interpreter in order to receive a trial which is fundamentally fair. See: *United States v. Gallegos–Torres,* 841 F.2d 240, 242 (8th Cir.1988); *State v. Hernandez,* 120 Idaho 785, 788, 820 P.2d 380, 383 (1991).

As a general rule, "the determination of whether an interpreter is warranted in a particular case is within the sound discretion of the [trial] court." 23A C.J.S., Criminal Law, § 1152, at p. 12. See: *Commonwealth v. Riley,* 354 Pa.Super. 422, 424, 512 A.2d 22, 23 (1986); *Commonwealth v.*

*Carillo,* 319 Pa.Super. 115, 127, 465 A.2d 1256, 1262 (1983). See also: *United States v. Markarian,* 967 F.2d 1098, 1104 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1344, 122 L.Ed.2d 726 (1993); *Valladares v. United States,* 871 F.2d 1564, 1566 (11th Cir.1989); *United States v. Coronel–Quintana,* 752 F.2d 1284, 1291 (8th Cir.1985), *cert. denied,* 474 U.S. 819, 106 S.Ct. 66, 88 L.Ed.2d 54 (1985); *United States v. Martinez,* 616 F.2d 185, 188 (5th Cir.1980), *cert. denied,* 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981). The discretion of the trial court, however, "is to determine the factual question of whether an interpreter is needed; a trial court does not have discretion to decide whether a defendant who needs an interpreter has a legal entitlement to one." *State v. Neave,* 117 Wis.2d 359, 364, 344 N.W.2d 181, 183 (1984). Thus,

> where the court is put on notice that a defendant has difficulty understanding or speaking the English language, it must "make unmistakably clear to him that he has a right to have a competent translator assist him, at state expense if need be." Where, on the other hand, no request for an interpreter has been made and the defendant appears to comprehend the nature of the proceedings and the charges against him, the trial court does not abuse its discretion by proceeding without appointing an interpreter.

*People v. Navarro,* 134 A.D.2d 460, 461, 521 N.Y.S.2d 82, 83 (1987) (citations omitted). See also: *Luna v. Black,* 772 F.2d 448, 451 (8th Cir.1985); *United States v. Carrion,* 488 F.2d 12, 14–15 (1st Cir.1973), *cert. denied,* 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974); *United States ex rel. Negron v. State of New York,* 434 F.2d 386, 390–391 (2d Cir.1970); *Chao v. State,* 604 A.2d 1351, 1362 (Del.1992); *State v. Neave, supra* at 373–77, 344 N.W.2d at 188–189; *People v. Atsilis,* 60 Mich. App. 738, 739, 231 N.W.2d 534, 535 (1975). "[A] defendant does not necessarily lose his right to an interpreter by not asserting it. It depends on the facts in each case as to whether the trial court was effectively alerted to the need for an interpreter." *State v. Neave, supra* at 368, 344 N.W.2d at 185. Compare: *State v. Natividad,* 111 Ariz. 191, 194, 526

P.2d 730, 733 (1974) and *People v. Sepulveda,* 412 Mich. 889, 313 N.W.2d 283 (1981) with *People v. Ramos,* 26 N.Y.2d 272, 309 N.Y.S.2d 906, 258 N.E.2d 197 (1970) and *State v. Woo Won Choi,* 55 Wash.App. 895, 900–04, 781 P.2d 505, 508–509 (1989).

Although we have found no Pennsylvania appellate court decisions which have examined the right of a deaf person to an interpreter under section 8701(b), the Pennsylvania Supreme Court, in *Commonwealth v. Pana,* 469 Pa. 43, 364 A.2d 895 (1976), addressed the analogous situation of a defendant's right to an interpreter because of difficulty in understanding or speaking the English language. There, the Supreme Court spoke as follows:

A defendant's ability to use an interpreter encompasses numerous fundamental rights. The failure to understand the proceedings may deny him his right to confront witnesses against him, his right to consult with his attorney, or his right to be present at his own trial. See *United States ex rel. Negron v. State of New York,* 434 F.2d 386 (2d Cir. 1970); *United States ex rel. Navarro v. Johnson,* 365 F.Supp. 676, 681 n. 3 (E.D.Pa.1973); see generally Annotation, Right of Accused to Have Evidence or Court Proceedings Interpreted (hereinafter "Annotation"), 36 A.L.R.3d 276 (1971). The use of an interpreter may also be necessary to protect appellant's right to testify in his own behalf. See *United States v. Carrion,* 488 F.2d 12 (1st Cir.1973), *cert. denied,* 416 U.S. 907, 94 S.Ct. 1613, 40 L.Ed.2d 112 (1974). As the Court of Appeals stated in *Carrion:*

"If the defendant takes the stand in his own behalf, but has an imperfect command of English, there exists the ... danger that he will either misunderstand crucial questions or that the jury will misconstrue crucial responses."

488 F.2d at 14.

The decision to use an interpreter rests in the sound discretion of the trial judge. See *United States v. Carrion, supra; United States ex rel. Negron v. State of New York, supra;* Annotation § 7, 36 A.L.R.2d at 293 (1971). This is

necessary because numerous factors such as the complexity of issues and testimony and the language ability of defendant must be taken into consideration. *United States v. Carrion, supra.* However, in view of the important rights involved, the trial court must consider all relevant factors in its initial determination of need. If it becomes apparent that an interpreter is necessary during the trial, the court should, on its own motion or on motion of a party, make an interpreter available. See *United States ex rel. Negron v. State of New York, supra.*

*Commonwealth v. Pana, supra* at 48–49, 364 A.2d at 898. See also: *United States v. Mosquera,* 816 F.Supp. 168, 172–173 (E.D.N.Y.1993); *People v. Avila,* 797 P.2d 804, 805–806 (Colo. Ct.App.1990); *Martinez Chavez v. State,* 534 N.E.2d 731, 736–737 (Ind.1989); *State v. Kounelis,* 258 N.J.Super. 420, 426–29, 609 A.2d 1310, 1313–1314 (1992); *State v. Linares,* 192 N.J.Super. 391, 393, 470 A.2d 39, 40 (1983); *Application of Murga,* 631 P.2d 735, 736–737 (Okl.1981); *Baltierra v. State,* 586 S.W.2d 553, 556–559 (Tex.Crim.App.1979)(en banc).

In *State v. Schaim,* 65 Ohio St.3d 51, 600 N.E.2d 661 (1992), the Supreme Court of Ohio observed:

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." The confrontation clause requires that a defendant be given the opportunity to be physically present at trial, that the defendant be competent to assist in his own defense, and that the defendant understand the language of the forum. LaFave & Israel, Criminal Procedure (1985) 874, Section 23.2(c). A defendant who cannot hear is analogous to a defendant who cannot understand English, and a severely hearing-impaired defendant cannot be tried without adopting reasonable measures to accommodate his or her disability. *Ferrell v. Estelle* (C.A.5, 1978), 568 F.2d 1128, 1132 (vacated as moot due to the prisoner's death, 573 F.2d 867); *People v. Rivera* (1984), 125 Misc.2d 516, 527–528, 480 N.Y.S.2d 426, 433–434.

*Id.* at 64, 600 N.E.2d at 671–672. See: 21A Am.Jur.2d, Criminal Law, § 958. See also: *Turner v. State,* 429 So.2d

645, 646 (Ala.Crim.App.1982); *People v. Guillory*, 178 Cal. App.2d 854, 860–62, 3 Cal.Rptr. 415, 420–421 (1960); *People ex rel. Myers v. Briggs*, 46 Ill.2d 281, 287, 263 N.E.2d 109, 113 (1970). The Court of Appeals of Louisiana, in interpreting a statute similar to 42 Pa.C.S. § 8701, stated:

These provisions recognize that the Constitution requires that a defendant sufficiently understand the proceedings against him to be able to assist in his own defense. Clearly, a defendant who has a severe hearing impairment, without an interpreter, cannot understand the testimony of witnesses against him so as to be able to assist in his own defense.

*State v. Barber*, 617 So.2d 974, 976 (La.App. 4th Cir.1993).[1] See also: *Adams v. State*, 749 S.W.2d 635 (Tex.Ct.App.— Houston 1988); *Ex parte Tijerina*, 571 S.W.2d 910, 912 (Tex. Crim.App.1978).

Our review of the record of appellant's trial discloses that neither appellant nor his counsel ever made a request for an interpreter or otherwise attempted to call to the trial court's attention that appellant was having difficulty understanding the proceedings. There was no mention of appellant's hearing impairment until two witnesses called by the defense testified that appellant was legally deaf and that he had a prominent scar on the left side of his face.[2] When the defense thereafter rested, the trial court engaged appellant in a colloquy to determine whether he had knowingly and voluntarily waived his right to testify in his own behalf. During this colloquy,

---

1. The statute being interpreted was described by the Louisiana appellate court as follows:

La.R.S. 15:270(A) provides that "[i]n all criminal prosecutions, where the accused is deaf or severely hearing-impaired, **he shall have the proceedings of the trial interpreted to him in a language that he can understand by a qualified interpreter appointed by the court.**" (Emphasis ours) La.R.S. 15:270(B)(1) continues by stating that "[i]n any case where an interpreter is required to be appointed by the court under this section, **the court shall not commence proceedings until the appointed interpreter is in court.**" (Emphasis ours) Clearly, the language of these sections is mandatory.
*State v. Barber, supra.*

2. In closing argument, appellant's trial counsel referred to this evidence in an attempt to impugn the identification testimony given by the victims.

appellant answered responsively the court's questions and appeared to understand and follow what was being said. During the course of this colloquy, however, the following references were made to appellant's hearing impairment:

THE COURT: Understand that under the law nobody can compel you to testify. Do you understand that? He doesn't read my lips either?

MR. MASCIANTONIO [Defense counsel]: Repeat the question. I'm sorry.

THE COURT: You understand that under the law no one can compel you to testify?

THE DEFENDANT: Yes.

. . . .

THE COURT: ... You are not arguing to the jury he can't hear. You are not allowed to do that. That is not the reason he is not taking the stand?

MR. MASCIANTONIO: No.

THE COURT: The decision—

MR. MASCIANTONIO: I can mention it with respect to the evidence, his turning around.

THE COURT: I don't know if that was proper evidence but there was no objection to it, and that is a minimum type of appeal for the jury because it has nothing to do—

MR. MASCIANTONIO: It could.

THE COURT: He can't hear. I don't know what effect that had on the evidence.

MR. KENNEDY [Assistant District Attorney]: I sure should have objected.

THE COURT: The scar, I would say everybody saw it. It is visible. I don't see it.

MR. MASCIANTONIO: Your Honor, I think the hearing is relevant.

THE COURT: That's relevant. That's relevant. Take five minutes. We find that the defendant made an intelligent choice and is not being deprived of his rights.

Appellant asserts that the above quoted portions of the colloquy demonstrated the trial court's awareness of his inability to follow the proceedings, thereby triggering the court's duty to appoint an interpreter under section 8701. The Commonwealth, on the other hand, suggests that appellant's ability to answer responsively the court's questions during the colloquy conclusively establishes that he understood what was occurring at his trial and was able to communicate with counsel and assist in his own defense.

■ Although it is clear from the record that, by the end of trial, the court was aware that appellant had some type of hearing impairment, there is absolutely nothing in the record to indicate that the trial court was aware, or should have been aware, that appellant, because of a hearing impairment, was unable to comprehend the nature of the proceedings, to hear the testimony of witnesses, or to assist in his own defense. From the record which is before this Court, we can make no determination of the extent of appellant's hearing impairment or the effect which it may have had on the fairness of appellant's trial. Therefore, we are unable to conclude that the trial court abused its discretion by failing sua sponte to appoint a sign language interpreter to assist appellant in following the trial. No request for an interpreter was ever made, and a necessity for an interpreter was not so readily apparent that the trial court was required to appoint one sua sponte.

■ "Because the law presumes that counsel is effective, the burden of establishing ineffectiveness rests with appellant." *Commonwealth v. House*, 371 Pa.Super. 23, 28, 537 A.2d 361, 363 (1988). See also: *Commonwealth v. Baker*, 531 Pa. 541, 562, 614 A.2d 663, 673 (1992); *Commonwealth v. Floyd*, 506 Pa. 85, 90, 484 A.2d 365, 367 (1984). Therefore, it is necessary that a defendant asserting a claim of ineffective assistance of counsel make an offer of proof "alleging sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective." *Commonwealth v. Durst*, 522 Pa. 2, 5, 559 A.2d 504, 505 (1989). See also: *Commonwealth v. Pettus*, 492 Pa. 558, 563, 424 A.2d

1332, 1335 (1981); *Commonwealth v. Petras,* 368 Pa.Super. 372, 377, 534 A.2d 483, 485 (1987). In order to prevail on a claim of ineffectiveness, moreover, appellant must demonstrate that: "(1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him." *Commonwealth v. Williams,* 532 Pa. 265, 274, 615 A.2d 716, 720 (1992). See also: *Commonwealth v. Carpenter,* 533 Pa. 40, 45, 617 A.2d 1263, 1265 (1992); *Commonwealth v. Rollins,* 525 Pa. 335, 344, 580 A.2d 744, 748 (1990). However, " '[w]hen an arguable claim of ineffective assistance of counsel has been made, and there has been no evidentiary hearing in the [trial court] to permit the defendant to develop evidence on the record to support the claim, and to provide the Commonwealth an opportunity to rebut the claim, this Court will remand for such a hearing.' " *Commonwealth v. McBride,* 391 Pa.Super. 113, 121, 570 A.2d 539, 543 (1990), quoting *Commonwealth v. Petras, supra.* See also: *Commonwealth v. Edmiston,* 535 Pa. 210, 237, 634 A.2d 1078, 1092 (1993); *Commonwealth v. Thuy,* 424 Pa.Super. 482, 498, 623 A.2d 327, 335–336 (1993).

In *State v. Staples,* 121 N.H. 959, 437 A.2d 266 (1981), the Supreme Court of New Hampshire reversed the defendant's conviction and awarded a new trial on grounds that trial counsel had been ineffective for failing to take action to compensate for the defendant's inability to hear testimony during his trial. At a post-trial evidentiary hearing, the defendant had presented medical evidence indicating that his hearing impairment was such as to have made it very difficult for him to have heard the testimony of witnesses and questions directed at him during trial. In holding that the defendant had been denied the effective assistance of counsel, the Supreme Court of New Hampshire reasoned as follows:

The ABA Standards for the Defense Function admonish defense attorneys to "inform the accused of his rights ... and take all necessary action to vindicate such rights." ABA Standards for Criminal Justice § 4–3.6, at 4.45 (2d ed. 1980). The authors caution that counsel must often take

"special steps" to protect the accused, *id.*, commentary to § 4–3.6 at 4.46, which may include ordering medical examinations of the accused. *Id.* In this case, no steps were taken prior to trial, and those that were taken during trial were inadequate.

In *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975), the United States Supreme Court held that a person whose mental condition prevented him from understanding the nature and object of the proceedings against him, from consulting with counsel, and from assisting in the preparation of his defense, could not get a fair trial. Though the defendant in this case was not mentally deficient, his hearing impairment presents us with an analogous and equally serious problem. He, like the defendant in *Drope*, was unable to assist effectively in the preparation of his defense. Unlike *Drope*, however, remedial measures could have been taken to enable Staples to assist in his own defense, had his trial lawyer only initiated them prior to trial. We find that, in this respect, the defendant was ineffectively represented as a matter of law. *State v. Staples, supra,* 121 N.H. at 962–63, 437 A.2d at 268.

Similarly, in *Peeler v. State,* 750 S.W.2d 687 (Mo.Ct.App. 1988), the Missouri Court of Appeals reversed an order denying a petition for post-conviction relief and granted a hearing impaired defendant a new trial on grounds that his trial counsel had been constitutionally ineffective for failing to request the services of an interpreter at the defendant's trial. In so holding, the Court set forth the following rationale:

Our research has revealed no Missouri cases that address this issue. However, this situation is not unlike cases that involve a defendant who is unable to speak English. In *Negron v. State of New York,* 434 F.2d 386 (2d Cir.1970) a Spanish speaking defendant was convicted of second degree murder. The only interpreter present at trial was one employed by the prosecutor to translate witness testimony from Spanish to English. The defendant was able to learn of the proceedings only by way of summaries given to him during breaks by the state's interpreter. The court found

the conviction violated principals of fundamental fairness as well as Negron's Sixth Amendment guarantee of a right to confront and cross examine adverse witnesses. *Id.* at 389. By subjecting Negron to proceedings that he did not understand, the court in effect denied Negron the right to be present at his own trial. If the right to be present is to have meaning, every criminal defendant must have a reasonable degree of rational understanding and the ability to consult with his lawyer. *Id.; Holmes v. State,* 494 So.2d 230 (Fla.Dist.Ct.App.1986).

. . . .

After a review of the trial transcript it appears that Samuel Peeler was able to adequately understand the questions asked of him on direct and cross-examination. However, this fact alone does not mean that he had a rational understanding of the rest of the proceeding. The testimony given by Dr. Peak at the evidentiary hearing makes it clear that Samuel was probably unable to understand what was being said at trial. The state offered no contrary evidence, in fact, its own witness acknowledged that Samuel likely did not understand what was being said to him at sentencing. We find that the failure of counsel to request an interpreter constituted ineffective assistance of counsel and resulted in a conviction that is constitutionally infirm and that the finding of the hearing court in this respect was clearly erroneous. We reverse the conviction of Samuel Peeler and remand the cause for a new trial.

*Peeler v. State, supra* at 690–691. See also: Annotation, Ineffective Assistance Of Counsel: Use Or Nonuse Of Interpreter At Prosecution Of Hearing–Impaired Defendant, 86 A.L.R. 4th 698 (1991).

■ After careful review, we are satisfied that there is arguable merit in appellant's contention that his trial counsel was ineffective for failing to request that the trial court appoint a sign language interpreter pursuant to 42 Pa.C.S. § 8701(b) and that his post-verdict counsel was ineffective for failing to raise the issue of trial counsel's effectiveness in this

regard. Appellant has alleged that he had a serious hearing impairment which prevented his being able to follow much of the trial. He also may have been unable to communicate adequately with his counsel. He has further alleged that he would have been able to understand and communicate at his trial if a sign language interpreter had been appointed. Review of the record discloses that trial counsel was aware of appellant's hearing impairment, but made no request of the trial court to appoint an interpreter.[3] Under these circumstances, we deem it necessary to remand this case for an evidentiary hearing at which appellant will be able to present evidence in support of his claim, and the Commonwealth will have the opportunity to rebut it.

We emphasize, however, that at the evidentiary hearing the burden of proof will rest squarely on appellant. He must prove that his hearing was so impaired at the time of trial that the absence of an interpreter denied him a fair trial. Trial counsel will then have an opportunity to explain the reasons, if any, for his failure to request that an interpreter be appointed. Appellant will be entitled to relief only if he proves that there was no reasonable basis for trial counsel's failure to request appointment of an interpreter and that he, the appellant, was prejudiced by counsel's omission.

The judgment of sentence is vacated, at least for the time being, and the case is remanded for an evidentiary hearing to determine whether trial counsel and post-trial counsel were ineffective with respect to appellant's claim that a request for the appointment of a sign language interpreter should have been made at his trial. If counsel are found to have been

---

**3.** Although appellant's trial counsel did not request the appointment of an interpreter at the time of trial, counsel did assert in post-trial motions that "[t]he trial court did err in failing to arrange [ ] a sign language interpreter for the defendant, the defendant being deaf; violating the defendant's constitutional right to due process in denying said defendant the opportunity to confront accusers and assist counsel in his defense...." This issue, however, was not pursued in the supplemental post-trial motions filed by appellant's post-verdict counsel. Nor was any argument made by post-verdict counsel that appellant's trial counsel had been ineffective for having failed to request the appointment of an interpreter.

534

ineffective, a new trial must be granted. If counsel were not ineffective, however, the judgment of sentence may be reimposed. Jurisdiction is not retained.