J-S47043-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| BRAHIM ZHOURI, | : | |
| | : | |
| Appellant | : | No. 2135 MDA 2014 |

Appeal from the PCRA Order Entered December 2, 2014,
in the Court of Common Pleas of Dauphin County,
Criminal Division, at No(s): CP-22-CR-0004564-2013

BEFORE: ALLEN, OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:　　　　　**FILED AUGUST 21, 2015**

Brahim Zhouri (Appellant) appeals from the order entered on December 2, 2014, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Upon review, we affirm.

On February 11, 2014, Appellant pled guilty to criminal trespass. He received a sentence of 24 months of probation. He filed *pro se* a motion to withdraw the plea agreement on February 19, 2014, and a *pro se* motion challenging the validity of the guilty plea on February 28, 2014. Both documents were forwarded to counsel, Steven Mimm, Esquire, who took no action on the motions.

Appellant *pro se* timely filed a PCRA petition on April 16, 2014. New counsel was appointed, and a supplemental PCRA petition was filed on July

_____
*Retired Senior Judge assigned to the Superior Court.

9, 2014. On November 6, 2014, following an evidentiary hearing, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition. Therein, the PCRA court provided its reasons for dismissing Appellant's petition and informed him that he had 20 days to file any objection to the notice of intent to dismiss. Appellant did not respond, and the PCRA court dismissed the petition with a final order on December 2, 2014. Appellant timely filed his notice of appeal.

On appeal, Appellant raises two questions for our review: whether Appellant's guilty plea was unlawfully induced as a result of counsel's ineffectiveness when 1) counsel failed to inform Appellant of the possibility of deportation, and 2) the interpreter employed during Appellant's guilty plea was not of the correct dialect. Appellant's Brief at 5.

We begin with our well-settled standard of review:

> Our standard of review for an order denying post-conviction relief is whether the record supports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

*Commonwealth v. McDermitt*, 66 A.3d 810, 813 (Pa. Super. 2013) (internal citations omitted).

Allegations of ineffectiveness in connection with a guilty plea do not warrant relief unless counsel's ineffectiveness caused an involuntary, unknowing or unintelligent plea. *Commonwealth v. Anderson*, 995 A.2d

1184, 1192 (Pa. Super. 2010). Where the defendant enters a plea on counsel's advice, the voluntary and knowing nature of that plea turns on whether counsel's advice fell within the range of competence demanded of attorneys in criminal cases. *Id.*

Appellant first argues that his guilty plea was not knowingly entered, as counsel was ineffective for failing to inform him of the immigration consequences of his guilty plea. Appellant's Brief at 11-13. In instances where a defendant is a noncitizen, the United States Supreme Court has held that counsel must inform the defendant whether a plea carries a risk of deportation, and that counsel's failure to do so presents a cognizable ineffective assistance of counsel claim. *Padilla v. Kentucky*, 559 U.S. 356, 374 (2010). This Court has held that *Padilla* requires "counsel to inform a noncitizen defendant that there is a risk of deportation, not that deportation is a certainty." *Commonwealth. v. Escobar*, 70 A.3d 838, 841 (Pa. Super. 2013) (citing *McDermitt*, 66 A.3d at 814).

With respect to Appellant's first issue, the PCRA court concluded that there was "no reason to believe that Attorney Mimm deviated from [] standard operating procedure" at the Dauphin County Public Defender's Office—to counsel clients on immigration matters or to provide them an opportunity to speak with an immigration attorney—as soon as a client was identified as a noncitizen. Trial Court Opinion, 11/6/2014, at 6-7, 11. This

conclusion is supported by the testimony of Attorney Mimm, during the PCRA

hearing:

> Q: Do you remember whether or not you discussed deportation with Mr. Zhouri?
>
> A: I reviewed the file prior to leaving the Public Defender's Office. I didn't have any specific notes in my file about any immigration discussion. **I can tell you that it's generally, especially any time you have an interpreter involved, standard procedure to ask the question about immigration status**….
>
> ***
>
> Q: Did you indicate to Mr. Zhouri that if he pleaded guilty, he would be going home? Do you remember?
>
> A: I told you, I couldn't remember the specifics…. I can tell you that the general conversation would be, you're lookin' at deportation on the burglary. I can't say definitively, you know, what a felony trespass would do, because I wouldn't be certain. **You know, you have an opportunity to talk to an immigration attorney if you need more time. That's the general conversation.** I'm not an immigration attorney, so I couldn't give someone a definitive answer on an immigration issue, but I can give them an opportunity to talk to an immigration attorney.

N.T., 10/30/2014, at 7-9 (emphasis added).

Attorney Mimm further testified regarding the requirements of ***Padilla***,

noting that when "the case law changed, it became standard practice to

[inquire as to clients'] immigration status" and that this type of inquiry is

"normally the first question." ***Id.*** at 11, 13. Attorney Mimm also attested

that he worked with "hundreds" of noncitizens during his time in the Public

Defender's Office, and that this standard practice was likely employed in the

case *sub judice* because he had to make special arrangements to schedule an Arabic translator. *Id*. at 11-12. Given the testimony presented at the evidentiary hearing, which the PCRA court found to be credible, Appellant has failed to convince us that the PCRA court erred in determining that counsel satisfied his duty under **Padilla**. Accordingly, Appellant's first claim fails.

Appellant next argues that his guilty plea was not knowingly entered based upon counsel's ineffectiveness, because he was unable to understand his interpreter, who spoke Egyptian, and not Moroccan, Arabic. Appellant's Brief at 13-15. In support of this argument, Appellant relies on **Commonwealth v. Pana**, 364 A.2d 895 (Pa. 1976), and **Commonwealth v. Wallace**, 641 A.2d 321 (Pa. Super. 1994). These cases, however, are factually and legally distinct from the case before us.

In **Pana**, the Court held that a Puerto Rican defendant with limited English language ability was denied his right to testify on his own behalf when the trial court refused to allow him to use an interpreter so he could testify in Spanish, his native language. **Pana**, 364 A.2d at 899. The central issue in **Wallace** was similarly distinct, focusing on counsel's ineffectiveness for not requesting the appointment of an interpreter for his deaf client. **Wallace**, 641 A.2d at 324-27. Indeed, **Wallace** sensibly suggests that the

onus to inform the court of a comprehension issue lies with the defendant.[1]

Instantly, Appellant had access to an interpreter throughout all stages of the proceedings. On February 11, 2014, Appellant signed the written plea colloquy with the assistance of an interpreter, indicating that he understood the entirety of the document. *See* Guilty Plea Colloquy, 2/11/14, at 4 ("I affirm that I have read the above document [with interpreter] and I understand its full meaning, and I wish to enter a plea of guilty to the offense or offenses specified.").

At the guilty plea hearing, he was given the opportunity to testify through an interpreter.[2] N.T., Guilty Plea and Sentencing, 2/22/2014, at 9. Moreover, the interpreter was present throughout the entirety of the

---

[1] Finding arguable merit in Wallace's contention that counsel was ineffective for failing to request that the trial court appoint an interpreter, this Court remanded the case for a hearing, noting, however:

> that at the evidentiary hearing the burden of proof will rest squarely on appellant. He must prove that his hearing was so impaired at the time of trial that the absence of an interpreter denied him a fair trial. Trial counsel will then have an opportunity to explain the reasons, if any, for his failure to request that an interpreter be appointed. Appellant will be entitled to relief only if he proves that there was no reasonable basis for trial counsel's failure to request appointment of an interpreter and that he, the appellant, was prejudiced by counsel's omission.

*Id.*, 641 A.2d at 329.

[2] During the guilty plea proceedings, Appellant responded to all queries through an Arabic interpreter of Egyptian dialect, Marwan Abdel-Rahman.

proceedings. *Id.* Appellant testified that he understood the maximum fines and penalties listed on the plea form. *Id.* at 3. He also testified, through the interpreter, that he understood everything in the colloquy form; that by pleading guilty he acknowledged he was giving up certain constitutional and appellate rights. *Id.* at 4. At no point did Appellant raise any translation issues during his written or oral plea, nor did he indicate there was a language comprehension problem when he signed the colloquy. Trial Court Opinion, 11/6/2014, at 7. Based on the foregoing, we conclude that Appellant is not entitled to relief on his second issue.

Accordingly, having found no merit to Appellant's issues on appeal, we affirm the order below.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2015

- 7 -