J-S55012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JUNIOR VILLANUEVA | |
| Appellant | No. 85 EDA 2016 |

Appeal from the PCRA Order November 30, 2015
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0002698-2009

BEFORE:  LAZARUS, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:　　　　　　　**FILED AUGUST 19, 2016**

Junior Villanueva appeals from the order entered in the Court of Common Pleas of Northampton County denying his petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

Following trial in September 2010, a jury convicted Villanueva of rape of a child,[1] statutory sexual assault,[2]  involuntary deviate sexual intercourse with a child,[3] one count of sexual assault,[4] aggravated indecent assault of a

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3121(c).

[2] 18 Pa.C.S.A. § 3122.2.

[3] 18 Pa.C.S.A. § 3124.1.

child,[5] indecent assault of a person less than thirteen years of age,[6] endangering the welfare of children,[7] and corruption of minors.[8] The convictions stemmed from the sexual abuse of a minor child, who was the daughter of Villanueva's live-in companion.

On January 25, 2011, the court sentenced Villanueva to an aggregate term of 46 to 92 years of imprisonment. Villanueva filed a direct appeal, and this Court affirmed the judgment of sentence. *See Commonwealth v. Villanueva*, 53 A.3d 927 (Pa. Super. 2012). Villanueva filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied. *Commonwealth v. Villanueva*, 64 A.3d 632 (Pa. 2013).

On March 14, 2014, Villanueva filed a timely *pro se* PCRA petition. The court appointed counsel, and on January 15, 2015, counsel filed an amended PCRA petition. Following a hearing, the PCRA court denied relief. This appeal followed. Villanueva raises five issues, each challenging trial counsel's effectiveness:

*(Footnote Continued)* ─────────────

[4] 18 Pa.C.S.A. § 3124.1.

[5] 18 Pa.C.S.A. § 3125(b).

[6] 18 Pa.C.S.A. § 3126(a)(7).

[7] 18 Pa.C.S.A. § 4304(a)(1).

[8] 18 Pa.C.S.A. § 6301(a)(1).

1. Attorney Andres was ineffective for failing to appeal the Lower Court's finding that the alleged child victim was competent to testify.

2. Attorney Andres was ineffective for failing to request that the Lower Court order the alleged child victim to undergo a psychiatric evaluation to assist in determining her competency to testify.

3. Attorney Andres was ineffective for failing to request the appointment of a certified Spanish sign language interpreter for Appellant.

4. Attorney Andres was ineffective for failing to object to certain leading and hearsay questions from the Commonwealth at trial.

5. Attorney Andres was ineffective for failing to properly advise Appellant about testifying at trial.

Appellant's Brief, at 4.

A petitioner challenging counsel's effectiveness will be granted relief under the PCRA if he proves by a preponderance of the evidence that his conviction or sentence resulted from "the ineffective assistance of counsel, which, in the circumstance of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii); *Commonwealth v. Sportz*, 84 A.3d 294, 311 (Pa. 2014).

Our Supreme Court has further stated that before a PCRA petitioner will be deemed entitled to relief on an ineffectiveness claim, he or she must establish:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. *Commonwealth*

- 3 -

*v. Chmiel*, 612 Pa. 333, 30 A.3d 1111, 1127 (2011) (employing ineffective assistance of counsel test from *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987)). Counsel is presumed to have rendered effective assistance. *Commonwealth v. Ali*, 608 Pa. 71, 10 A.3d 282, 291 (2010). Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. *Commonwealth v. Jones*, 590 Pa. 202, 912 A.2d 268, 278 (2006). Finally, because a PCRA petitioner must establish all the *Pierce* prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis. *Ali*, at 291.

*Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015) (footnote omitted).

In his first issue, Villanueva argues that his attorney was ineffective for failing to raise on direct appeal the issue of the child-witness's competency. Villanueva claims that the trial court applied an incorrect standard while evaluating the child's competency.

Generally, every witness is presumed competent; however, the court must examine a child witness for competency. *Rosche v. McCoy*, 156 A.2d 307, 310 (Pa. 1959); *Commonwealth v. Moore*, 980 A.2d 647, 649-50 (Pa. Super. 2009). In *Rosche*, the Pennsylvania Supreme Court held that it would presume competent a child who is over the age of fourteen. Further, the Court set forth the following factors to consider when determining whether a child is competent:

(1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that

she is called to testify about, and (3) a consciousness of the duty
to speak the truth.

*Rosche*, 156 A.2d at 310. The Court further elaborated that because children are prone to living in the world of make-believe, a court must exercise care since "much must be left to the discretion of the trial judge who hears and sees the witness." *Id.*

Here, during the competency hearing, the child was able to respond to most of the questions she was asked. The child understood why she was in court, and answered in the affirmative when asked if she knew what it meant to tell the truth. Although the child appeared nervous in detailing what she was going to talk about in court, she did identify Villanueva as the subject of her testimony. N.T. Trial, 9/13/10, at 10-12. The court and the parties extensively interviewed the child about the definition of truth, which she correctly explained as "do not tell a lie." *Id.* at 8. When asked what happens if you lie, the child stated without hesitation that "[y]ou get in trouble." *Id.* The child was well-aware that the consequence of telling a lie is a punishment.

The trial court observed the witness at the hearing and, following the hearing, heard argument from defense counsel and the Commonwealth. The court determined that the child communicated effectively, was able to recall events to which she testified, and understood the need to be truthful. The court stated that although the child was hesitant, "she was not abjectly confused, nor was she unable to perceive and frame answers to the questions put to her." Trial Court Opinion, 11/30/15, at 8. Further, despite

- 5 -

the court's estimation that "the child may not have been an ideal witness[,]" the court accurately noted that "[c]hildren rarely are." *Id.* We conclude the court applied the correct standard, *see Rosche*, *supra*, and that its determination of competency is supported in the record. This issue is meritless and, therefore, counsel was not ineffective for failing to raise the issue on direct appeal. *Treiber*, *supra*.

In his second issue, Villanueva argues that because of the child's "manifest incompetence," Villanueva's trial counsel was ineffective in failing to request the court order an independent psychiatric evaluation of the child. In his brief, Villanueva contends that "a trial court may order a psychiatric evaluation of the child witness to assist the court in evaluating the child's competency to testify where the competency hearing establishes a reason to doubt the child's competency." *Commonwealth v. Shearer*, 894 A.2d 793, 794-95 (Pa. Super. 2009). This claim is meritless. As demonstrated above, the court engaged in a thorough inquiry and analysis of the child's competency to testify. The court made the competency determination independently, determining that there was no compelling reason or indicia of incompetency to warrant a psychological evaluation. Therefore, counsel was not ineffective for failing to request an independent psychiatric evaluation. *Treiber*, *supra*.

In his third issue, Villanueva argues that because he had a hearing deficiency, his counsel was ineffective in failing to request a Spanish sign language interpreter.

> Where the court is put on notice that a defendant has difficulty understanding or speaking the English language, it must make unmistakably clear to him that he has a right to have a competent translator assist him, at state expense if need be. Where, on the other hand, no request for an interpreter has been made and the defendant appears to comprehend the nature of the proceedings and the charges against him, the trial court does not abuse its discretion by proceeding without appointing an interpreter.

*Commonwealth v. Wallace*, 641 A.2d 321, 324 (Pa. Super. 1994). Further, "a defendant does not necessarily lose his right to an interpreter by not asserting it. It depends on the facts in each case as to whether the trial court was effectively alerted to the need for an interpreter." *Id.*

In *Wallace*, the court found that neither appellant nor his counsel called to the court's attention the fact that appellant was struggling to understand the proceedings due to his hearing impairment. The record did not reflect that the court "was aware, or should have been aware . . . that the appellant was unable to comprehend the nature of the proceedings, to hear the testimony of witnesses, or to assist in his own defense. *Id.* at 326. Consequently, the court in *Wallace* determined that since the appellant did not make a request for an interpreter and necessity for an interpreter was not readily apparent, the court did not abuse its discretion by failing to assign a sign language interpreter. *Id.* at 327.

In this case, Villanueva's counsel never alerted the trial court that his client was struggling to understand any of the court's proceedings because of his hearing disability. In addition, the record does not show that Villanueva's inability to understand would have been apparent to the court.

During the proceedings, Villanueva had a Spanish language interpreter who interpreted all the proceedings for him. In addition, the record reveals that Villanueva had the ability to read lips and had hearing aids. According to trial counsel, the proceedings were familiar to Villanueva, as counsel had extensively discussed them with his client ahead of time. Trial counsel consulted with Villanueva as to how he wanted to handle certain aspects of his representation. In light of the record and trial counsel's testimony, Villanueva's claim, which alleged that his counsel was ineffective because counsel did not request a sign language interpreter, is without merit. Counsel, therefore, was not ineffective. **_Treiber_**, **_supra_**.

Next, Villanueva argues that counsel was ineffective because he failed to object to certain leading questions and hearsay during the testimony of M.S., the teenage sister of the minor victim. He claims counsel should have objected to the following examination of M.S. by Assistant District Attorney Broscious :

> Q: Did you shower with your sister?
>
> A: Yes, sometimes, we used to take a shower together.
>
> Q: _I believe you previously said that sometimes he would come in?_
>
> A: Yeah. He always – when me and my sister, we used to take a bath together, he always came knocking on the door, say, I have to use the bathroom, it's an emergency, I really have to use it. So we just open the door.

(N.T. Trial, 9/14/2010, at 91-92 (emphasis added).

Villanueva contends the question assumed facts not in evidence. Generally, leading questions are prohibited on direct examination except as necessary to develop the witness's testimony. *See* Pa.R.E. 611(c). Arguably, therefore, this claim has merit. When questioned at the PCRA hearing as to why he did not object, trial counsel stated that he knew the witness would be testifying as to the events in the bathroom, and he knew that had he objected, the Commonwealth's attorney, whom trial counsel characterized as "an experienced attorney," would elicit that testimony by simply rephrasing the question. *See* N.T. PCRA Hearing, 5/29/15, at 56. Trial counsel believed an objection would not "have gotten me very far[.]" *Id.* We are satisfied that counsel's decision not to object was reasonable under the circumstances. *See Commonwealth v. Wells*, 521 A.2d 1388, (Pa. 1987).

Villanueva also challenges the statement M.S. made when describing the incident where a naked Villanueva had entered the bedroom she shared with the victim and that M.S. ordered him to be gone from the room when she returned from using the bathroom. M.S. testified:

> I still could feel like someone was pulling the blanket. So when I turned the light on like really fast, I saw [Villanueva] was like in the middle [of me and my sister]. And I saw him like bare naked. And then he turned the lights off really fast. . . . So I'm like, I told him, so what you doing here, you're supposed to be sleeping in your room. That's why you have your own bedroom. And he was like, oh, you should turn the light off, your sister is sleeping. When I look at my sister, my sister had her eyes open. So I told him, what you talking about, she is awake. So I'm like, well, I'm going to use the bathroom. So when I come

back, you should be like in your room. And so when I went to the bathroom, my sister came running after me when I was using the bathroom. She told me that I save her from [Villanueva]. And I'm like, what are you talking about? She's like, oh, you just save me, that's all.

N.T. Trial, 9/14/10, at 87.

Villanueva claims this is inadmissible hearsay and that counsel was ineffective for failing to object. Counsel explained at the PCRA hearing that he did not object because, although it may have been hearsay, the witness's testimony fell within either the excited utterance or present sense impression exceptions to the hearsay rule. N.T. PCRA Hearing, 5/29/15, at 59.

"`Hearsay' is a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). We agree with counsel's reasoning that the statement could fall within either the excited utterance exception to the hearsay rule, **see** Pa.R.E. 803(2) ("a statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused" not hearsay), or the present sense impression exception to the hearsay rule. **See** Pa.R.E. 803(1) ("a statement described or explaining an event or condition, made while or immediately after the declarant perceived it" not hearsay).

Again, we are satisfied that counsel's decision not to object was reasonable under the circumstances. **Wells**, **supra**. Further, we find no prejudice, as this information had already been presented through the

victim's testimony. This claim of ineffectiveness, therefore, also fails. ***Treiber***, ***supra***.

Finally, Villanueva argues that counsel was ineffective due to his failure to advise Villanueva of the benefits of testifying.

The decision whether or not to testify on one's own behalf is made by the defendant after full consultation with counsel. ***Commonwealth v. Breisch***, 719 A.2d 352, 355 (Pa. Super. 1998). Where counsel's decision not to call the defendant was reasonable, counsel was not ineffective. ***Commonwealth v. Whitney***, 780 A.2d 471, 476 (Pa. 1998). In order to sustain a claim that counsel was ineffective for "failing to call the appellant to the stand," the appellant must demonstrate either: (1) that counsel interfered with his right to testify, or (2) that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf. ***Breisch***, ***supra***, at 355.

The record reveals that counsel's decision not to call Villanueva was reasonable. Counsel explained that he advised his client of the advantages and disadvantages of testifying, he explained to Villanueva what the anticipated cross-examination would be, as well as his constitutional right to remain silent, and the court's jury instruction when a defendant invokes his right to remain silent. Counsel also stated that he explained that despite the court's jury instruction, the jury might make a negative inference from a defendant's failure to testify. Counsel explained that a jury likes to hear what the defendant has to say. He also explained that even though

Villanueva chose not to take the stand, there were categorical denials from the investigators and child services that would inform the jury of his position without having to testify. Counsel pointed out that ultimately it was Villanueva who made the decision against testifying. N.T. Trial, 5/29/2015, at 67-71. There is nothing to suggest that counsel in any way interfered with Villanueva's right to testify or that he gave any specific advice that would be unreasonable. Because Villanueva did not establish either that trial counsel interfered with his right to testify, or that trial counsel gave him unreasonable advice as to invite an intelligent decision as to whether to testify on his own behalf, his final claim of ineffectiveness is meritless. *Treiber*, *supra*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/19/2016